### UNITED STATES of America, Appellee,

#### v.

### BASIC CONSTRUCTION COMPANY, Henry S. Branscome, Henry S. Branscome, Inc., Appellants.

#### Nos. 82–5200, 82–5207 and 82–5208.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 9, 1983.

Decided June 27, 1983.

Rehearing and Rehearing En Banc Denied Aug. 5, 1983.

Certiorari Denied Oct. 31 and Dec. 5, 1983. See 104 S.Ct. 371, 527.

Lewis T. Booker, Richmond, Va. (L. Neal Ellis, Jr., Hunton & Williams, Richmond, Va., on brief) and William J. Murphy, Washington, D.C. (Vincent J. Fuller, Barry S. Simon, Linda C. Ray, Williams & Connolly, Washington, D.C., William F. Miller, Rideout & Miller, Williamsburg, Va., on brief), for appellants.

Margaret G. Halpern, Dept. of Justice, Washington, D.C. (William F. Baxter, Asst.

Atty. Gen., John J. Powers, III, Dept. of Justice, Theresa H. Clinton, Diane R. Kilbourne, Washington, D.C., on brief), for appellee.

Before BUTZNER, Senior Circuit Judge, and RUSSELL and WIDENER, Circuit Judges.

PER CURIAM:

This is an appeal from a conviction for violation of section 1 of the Sherman Act, 15 U.S.C. § 1. The defendants, Basic Construction Co., Henry S. Branscome, Inc., and Henry Branscome, were charged with conspiring in April of 1978 to rig the bidding for state road paving contracts. A jury found the defendants guilty, and both Basic and Branscome[1] appeal. We affirm.

I.

Basic's principal contention is that the district court gave erroneous jury instructions regarding the criminal liability of a corporation for acts of its employees. With regard to corporate liability, the court instructed the jury as follows:

> A corporation is legally bound by the acts or statements of its agents done or made within the scope of their employment, and within their apparent authority, acts done within the scope of employment and acts done on behalf of or to the benefit of a corporation, and directly related to the performance of the type duties the employee has general authority to perform.
>
> . . . .
>
> When the act of an agent is within the scope of his employment or within the scope of his apparent authority, the corporation is held legally responsible for it. This is true even though the agent's acts may be unlawful, and contrary to the corporations [sic] actual instructions.
>
> . . . .
>
> A corporation may be responsible for the action of its agents done or made

within the scope of their authority, even though the conduct of the agents may be contrary to the corporation's actual instructions, or contrary to the corporation's stated position.

> However, the existence of such instructions and policies, if any be shown, may be considered by you in determining whether the agents, in fact, were acting to benefit the corporation.

At trial, Basic introduced evidence which would have tended to prove that it had a longstanding, well known, and strictly enforced policy against bid rigging. Such evidence tended to show that the bid rigging activities for which it was charged were perpetrated by two relatively minor officials and were done without the knowledge of high level corporate officers. Basic argues that, in light of this evidence, the district court should have instructed the jury that it could consider the evidence of Basic's antitrust compliance policy in deciding whether the company had the requisite intent to violate the Sherman Act.

Basic rests its argument primarily on *United States v. United States Gypsum Co.*, 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). *Gypsum* involved a criminal antitrust prosecution in which the district court had instructed the jury that, if it found that the practice of competing producers giving to other producers on request, the price of gypsum board that was currently offered to a specific customer had the effect of fixing or raising prices, then they should presume as a matter of law that the parties intended such a result. *Id.* at 434, 98 S.Ct. at 2871. The Supreme Court held that these instructions were erroneous. The Court said that intent is an element that must be proved, and cannot be presumed, in a criminal antitrust prosecution. *Id.* at 434–36, 98 S.Ct. at 2871–73. Basic argues that the instructions given by the district court in the instant case run counter to the holding in *Gypsum* because they fix absolute criminal liability on a corporation for acts done by its em-

---

1. Henry S. Branscome, Inc., and its owner, Henry Branscome, filed a joint appeal. Together they will be referred to as "Branscome."

ployees, although such acts may have been in violation of corporate policies and express instructions. *Gypsum,* Basic argues, requires that the government prove that the corporation, presumably as represented by its upper level officers and managers, had an intent separate from that of its lower level employees to violate the antitrust laws. Consequently, Basic asserts that the jury should have been instructed to consider corporate antitrust compliance policies in determining whether Basic had the requisite intent.

■ We do not think that *Gypsum* requires so much. Rather, the case, on the point at issue, holds that intent to violate the antitrust laws must be proved in a criminal antitrust prosecution, and it defines the required intent. The Court there was not confronted with, and did not decide, the issue of corporate liability for the acts of employees. The instructions given by the district court in the instant case are amply supported by case law. *See United States v. Koppers Co.,* 652 F.2d 290, 298 (2d Cir.), *cert. denied,* 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 617 (1981); *United States v. Hilton Hotels Corp.,* 467 F.2d 1000, 1004–07 (9th Cir.1972), *cert. denied,* 409 U.S. 1125, 93 S.Ct. 938, 35 L.Ed.2d 256 (1973); *United States v. American Radiator & Standard Sanitary Corp.,* 433 F.2d 174, 204–05 (3d Cir.1970), *cert. denied,* 401 U.S. 948, 91 S.Ct. 928, 28 L.Ed.2d 231 (1971). These cases hold that a corporation may be held criminally responsible for antitrust violations committed by its employees if they were acting within the scope of their authority, or apparent authority, and for the benefit of the corporation, even if, as in *Hilton Hotels* and *American Radiator,* such acts were against corporate policy or express instructions. In *United States v. Koppers Co.,* the Second Circuit rejected the argument, as do we, that *Gypsum* changes the law on corporate criminal antitrust liability for the acts of its employees. 652 F.2d at 298.

■ In the instant case, the district court properly allowed the jury to consider Basic's alleged antitrust compliance policy in determining whether the employees were acting for the benefit of the corporation. It also properly instructed on the issue of intent in an antitrust prosecution, i.e., that corporate intent is shown by the actions and statements of the officers, directors, and employees who are in positions of authority or have apparent authority to make policy for the corporation.

## II.

■ Basic also argues that the court erroneously admitted evidence of an admission by silence by one of Basic's corporate officers, William Shaw. At trial, one of Basic's minor officials, Colosi, testified about a meeting he had with Shaw and another minor official of Basic, Howell, regarding the bidding on another road project. Colosi testified that at the end of the meeting, as he was leaving the room, he heard Howell say to Shaw, "I'll see if we can get anything for this work." Colosi did not hear any reply by Shaw. Colosi further testified that he believed this referred to bid rigging and that Howell was talking about trading the job there being discussed for one in the future.

Basic contends that the district court erred in admitting this evidence because it claims there was no evidence that Shaw heard, understood, or acquiesced in Howell's statement to him so as to render the evidence admissible as an admission under FRE 801(d)(2)(B).

Howell, Colosi, and Shaw were all present in the same room when the conversation took place, and we think there was credible evidence to support the government's position that Shaw heard, understood, and acquiesced in Howell's statement, thus meeting the requirements of FRE 801(d)(2)(B). *See United States v. Moore,* 522 F.2d 1068, 1075–76 (9th Cir.1975). From the transcript, it is clear the court properly decided the relevance of the statement as going to Basic's defense that it had a long-standing policy against bid rigging, but, of course, as the trial court recognized, it could have been used by the jury for any purpose, and there was no request to limit it.

■ The testimony came during the government's case in chief and was in rebuttal to a defense Basic had previously articulated, that of its longstanding policy against bid rigging. Yet, at the time the evidence was admitted, the claimed defense had not been the subject of evidence offered by Basic or sought to be established by cross-examination. We think the practice of admitting evidence to refute a defendant's opening statement in a criminal case is a practice to be discouraged and that rebuttal evidence ordinarily should not be permitted for that purpose during the government's case in chief. A criminal case is far different from a civil case in which the pleaded position of a party may establish relevance, and in nearly all instances in the defense of a criminal case the defendant does not finally have to decide on the defense he will make until the government closes its case in chief. Thus, in some instances, admitting evidence to rebut a defense made by a criminal defendant only in the opening statement of his attorney may get highly prejudicial and irrelevant evidence into the record. In this case, the defendant followed through on its articulated defense, so any error committed in admitting the conversation between Howell and Shaw was harmless. But this is not to say that it would be so in all cases, and, as we have said, the practice should be discouraged.

### III.

Branscome contends that it was reversible error for the district court to permit the introduction of evidence concerning the conviction of a codefendant, Howell. Howell, a former Basic employee, was included in the indictment against Basic and Branscome, but was tried and convicted separately prior to the trial of Branscome and Basic. At a pretrial conference, counsel for Basic said that he intended to bring out the fact that Howell was convicted, and the court ruled, over Branscome's objection, that both Basic and the government could refer to Howell's conviction.

During trial, two references were made to Howell's conviction. The first reference was made in the government's opening statement. The second reference was made during the direct examination of Colosi. When Colosi was asked about the result of Howell's trial, the court interrupted the questioning and stated that Howell had been tried and convicted. The court further said that the conviction of Howell had nothing to do with the trial of the other three defendants. At the conclusion of the trial, the court again cautioned the jury that they were not to be concerned with any disposition made with respect to a codefendant not on trial in the case at bar. No other reference was made to Howell's conviction.

■ Branscome's contention that the admission of this evidence is reversible error is controlled by *United States v. Curry*, 512 F.2d 1299 (4th Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 55, 46 L.Ed.2d 50 (1975). In *Curry* we held that it was not error for the court to tell the jury that certain codefendants charged in the same indictment as the defendants being tried had plead nolo contendre. *Id.* at 1303. We noted that, although it might be preferable to tell the jury only that the case against the codefendants had been previously disposed of, any prejudice caused by the evidence was cured by instructions that the jury could not consider the pleas as evidence of guilt of the defendants on trial. *Id.* We therefore hold that the references made to Howell's conviction in conjunction with timely and appropriate cautionary instructions do not constitute reversible error. We caution, however, that it is far better to simply tell the jury that cases of codefendants not on trial have been disposed of without saying how, and that they should not consider that matter, particularly as evidence of guilt.

### IV.

Steve Colosi, a key government witness, was one of the Basic employees directly involved in the bid-rigging conspiracy. At trial he testified as to the events surrounding the conspiracy charged and the practices and attitudes of other Basic employees

regarding bid rigging. Basic attempted to impeach Colosi's testimony by presenting the testimony of two witnesses as to their opinions of Colosi's honesty and trustworthiness. According to Basic's offer of proof, these witnesses would have testified that Colosi was neither honest nor trustworthy. The district court, however, refused to admit the evidence, stating that it had "absolutely no place in this case."

■ Basic asserts that the district court erred in refusing to admit this evidence, and we agree. Federal Rule of Evidence 608(a) expressly allows impeachment through opinion evidence of a witness's character for truthfulness. *See United States v. Truslow,* 530 F.2d 257, 264–65 (4th Cir.1975); A. Saltzburg & K. Redden, *Federal Rules of Evidence Manual* 346–47 (3d ed. 1982). Under the facts of this case, however, the district court's refusal to admit the evidence did not affect substantial rights and therefore was harmless error. 28 U.S.C. § 2111; Federal Rules of Criminal Procedure 52(a).

We base our conclusion that the exclusion of the evidence was harmless error on several considerations. First, Basic thoroughly attacked Colosi's credibility on cross-examination. Colosi admitted lying to counsel during a pre-trial interview about his bid-rigging activities, to using without permission company vehicles and gasoline for personal purposes, and to paving his driveway with materials and labor procured from Basic. Second, at least one of the witnesses willing to testify as to his opinion of Colosi's character for honesty and trustworthiness was a Basic employee at the time of trial. This relationship to Basic might well have weakened the weight of that particular opinion evidence. Third, much of Colosi's testimony related to the events surrounding the April 1978 bid-rigging conspiracy. The government, however, presented the testimony of two other witnesses who were involved in the conspiracy, and their testimony regarding the events was in agreement with that of Colosi's testimony.

Taken together, these considerations lead us to the conclusion that it is highly unlikely that the district court's refusal to allow opinion evidence as to Colosi's character for truthfulness would have affected the outcome of the trial. We therefore hold that the district court's ruling was harmless error.

We have considered the appellant's remaining assignments of error and find them to be without merit.

Accordingly, the convictions are

AFFIRMED.

DONALD RUSSELL and BUTZNER, Circuit Judges, concur in the opinion and in the result.

WIDENER, Circuit Judge, concurs in all of the opinion except part IV. While he agrees that the failure to admit the evidence of Colosi's bad character for truthfulness was error, he does not agree that it was harmless, and thus he cannot agree in the result. He therefore respectfully dissents and would award a new trial.