831 F.2d 292
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald GASQUE, Defendant-Appellant.
 No. 86-5184.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 8, 1987.
Decided: Sept. 29, 1987.
 
 1
 Steven M. Jacoby for appellant.
 
 
 2
 Wendy P. Arnell, Assistant United States Attorney (Breckinridge L. Willcox, United States Attorney on brief) for appellee.
 
 
 3
 D.Md.
 
 
 4
 AFFIRMED.
 
 
 5
 Appeal from the United States District Court for the District for the District of Maryland, at Baltimore. Joseph C. Howard, District Judge. (CA-86-0299-JH).
 
 
 6
 Before SPROUSE and CHAPMAN, Circuit Judges, and J. FREDERICK MOTZ, United States District Judge for the District of Maryland, sitting by designation.
 
 
 7
 MOTZ, District Judge.
 
 
 8
 Ronald Gasque appeals from his conviction for bank robbery and theft of bank proceeds. He raises three issues on appeal: (1) an alleged insufficiency of evidence; (2) the admission of testimony concerning an inculpatory statement made in his presence by his co-defendant; (3) the recalling of the Government's only identification witness to recant the witness' prior testimony failing to make an in-court identification of defendant.
 
 I.
 
 9
 On June 3, 1986 a branch of the Harbor Federal Savings and Loan Association located in Baltimore was robbed by two black males. Approximately $11,000 was taken. After the robbery fingerprints of one Tony Wilder (Gasque's co-defendant who eventually pled guilty) were found. No fingerprints of the other robber (whom a bank surveillance film showed to have been wearing gloves) were found.
 
 
 10
 Pictures taken at the robbery were circulated through Metro Crime Alert, a crime reporting and information system. Several days later Joseph Rush, an automobile salesman advised authorities that four black males had purchased a used truck from him for approximately $7,000 in cash on the evening of June 3, 1986. He stated that the $7,000 had been taken out of a paper bag and that there was money left in the bag after the purchase. The FBI received other calls identifying Wilder and defendant as the persons depicted in the surveillance photograph. Two tellers identified Wilder as one of the robbers from photo spreads, and Rush identified him as one of the men involved in purchasing the used truck. Rush also identified defendant as resembling one of the men present when the truck was purchased.
 
 
 11
 Rush testified at trial as did one Roland Wright, the record purchaser of the used truck. Wright testified that Wilder had asked him to purchase a truck for Wilder because Wilder did not have a driver's license or insurance. Wright also testified that on June 3, 1986 he had gone to Wilder's house and that defendant was sitting with Wilder in the kitchen. According to Wright, Wilder stated in defendant's presence that "we did a caper." Defendant made no comment.[1]
 
 
 12
 Richard Sylvia, a customer of the bank who was present in the branch at the time of the robbery, also testified for the Government at trial. He had picked defendant from a line-up as one of the robbers. However, when he first came to the stand, he failed to make an in-court identification of defendant. Surprised by his failure to do so, the Assistant United States Attorney trying the case telephoned Sylvia the following morning and inquired whether he had been threatened. Sylvia responded by stating that although he had not been threatened, he had, in fact, recognized defendant but had not made the in-court identification because he was frightened. The source of his fright was a series of comments made by his fellow employees, including a reference to a woman who had been recently found floating in the Baltimore harbor in a plastic bag weighted down with concrete blocks. The Assistant brought to the attention of the trial judge what had happened (without specifically alluding to the conversation regarding the woman found in the Baltimore harbor), and over defendant's objection the trial judge permitted Sylvia to be recalled to the stand and to recant his nonidentification of the day before. The trial judge also overruled an objection to a question as to the reason that he was changing his testimony, and Sylvia responded by mentioning the conversation regarding the Baltimore harbor incident.
 
 II.
 
 13
 The evidence was fully sufficient to sustain defendant's conviction. He was identified in a line-up as one of the robbers and was finally identified at trial as one of the robbers. His presence when the used truck was purchased for $7,000 in cash taken from a paper bag was probative circumstantial evidence, particularly in light of Wright's testimony that Wilder (against whom the evidence was quite strong) had stated in defendant's presence that "we did a caper." Defendant's silence in the face of this statement constituted a sufficient basis for inferring his adoption of it and made Wright's testimony admissible. See, e.g., Fed. Rule of Evidence 801(d)(2)(B); United States v. Basic Construction Co., 711 F.2d 570 (4th Cir.) cert. denied, 464 U.S. 956 (1983); United States v. Moore, 522 F.2d 1068 (9th Cir.1975), cert. denied, 423 U.S. 1049 (1976).
 
 
 14
 The question of whether or not to permit Sylvia to be recalled to the stand was clearly one falling within the trial court's discretion. See, e.g., United States v. Rucker, 557 F.2d 1046 (4th Cir.1977); Rhyne v. United States, 407 F.2d 657 (7th Cir.1969). More troublesome is the question of whether Sylvia's testimony concerning the fact that one of his fellow employees suggested that he might end up like the woman found floating in the Baltimore harbor was so inflammatory as to render the trial fundamentally unfair.
 
 
 15
 It certainly would have been preferable for the Assistant United States Attorney to bring to the attention of the trial judge in the chambers conference preceding Sylvia's being recalled to the stand precisely what Sylvia would testify concerning the reason that he had failed to make an in-court identification. The trial judge would then have had an opportunity to consider limiting Sylvia's testimony to a general statement that fellow employees had told him that it might be dangerous for him to testify in a criminal trial without making reference to the Baltimore harbor incident. However, Sylvia's change in testimony was significant, and in judging his credibility the jury was entitled to know the facts which were relevant to it. It was made absolutely clear to the jury that Sylvia had received no threats generated by defendant, and defense counsel was given wide latitude in cross-examining him on what defense counsel characterized as his "perjury" of the day before. The fight was hard but it was fair, and the trial court, in exercising its sound discretion, was not compelled to declare a mistrial because of the manner in which the testimony unfolded.
 
 
 16
 AFFIRMED.
 
 SPROUSE, Circuit Judge, dissenting:
 
 17
 It is, of course, within the trial court's discretion to permit the recall of a witness who has previously testified. United States v. Rucker, 557 F.2d 1046, 1049 (4th Cir.1977). Not only am I bound by that general principle, but I agree with it. The exercise of that discretion has limits, however, that, if exceeded, constitute an abuse. Here, I think the limits were exceeded.
 
 
 18
 The witness, Richard Sylvia, was clear in his initial testimony that he could not identify Gasque as one of the bank robbers. The prosecutor telephoned him the morning after he testified and encouraged him to return to court and recant his prior testimony. It is true that Sylvia indicated "after the fact" that he would have returned to court voluntarily. It remains, however, that he only returned after the prosecutor's telephone call. In my view, the allowance of the "correcting" of completed testimony in this fashion must be viewed with extreme caution. In exercising its discretion to allow such testimony vel non, the court should weigh not only the possible unfair prejudice but also the possible appearance of impropriety. If Sylvia had volunteered to recant his testimony, there would have been little danger of either effect. Numerous other circumstances likewise might negate such possibilities and justify recall. No such redeeming factors, however, weigh in favor of permitting Sylvia's altered testimony. Add to this the undisputably prejudicial nature of Sylvia's explanation for why he was unable to identify Gasque during his initial testimony,[1] and there results not only the improper rehabilitation of a damaging witness but also inferential evidence that was virtually impossible for Gasque to rebut. In short, I feel the trial court abused its discretion both in permitting Sylvia's recall and in not striking his irrelevant prejudicial remarks.
 
 
 
 [1]
 Wright's uncle was also present in the kitchen but he did not meet the physical description of the second person involved in the robbery
 
 
 [1]
 After Sylvia retook the stand, the following exchange occurred:
 [Prosecutor:] Mr. Sylvia, would you please tell us why at this time you wish to change your testimony?
 ...
 [Sylvia:] I froze at that time of the questioning here yesterday. And I was very nervous and I had some remarks made to me at my work place yesterday in a kidding way.
 ...
 [Prosecutor:] When you say some of the kidding at work, can you tell us what you mean by that?
 ...
 [Sylvia:] It was stated about a body that was removed from the harbor that had a cinder block tied to the body, and they said that I could be found floating in the harbor, or that some other way that you would have, that they could get to you, or something like that....