966 F.2d 1446
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
George Ronald Stalvey, Defendant-Appellant.
 No. 92-5008.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 8, 1992
Decided: June 8, 1992
 
 Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Graham C. Mullen, District Judge. (CR-90-190-C-MU)
 Argued: T. Patrick Matus, Charlotte, North Carolina, for Appellant.
 Harry Thomas Church, Assistant United States Attorney, Charlotte, North Carolina, for Appellee.
 ON BRIEF: Thomas J. Ashcraft, United States Attorney, Charlotte, North Carolina, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before HALL and HAMILTON, Circuit Judges, and KELLAM, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant George Stalvey appeals his conviction for conspiracy to possess with intent to distribute and to distribute in excess of five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846, and his conviction for money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). Finding no merit to Stalvey's claim that the government's non-compliance with the Jencks Act requires reversal, we affirm.
 
 
 2
 * A grand jury in the Western District of North Carolina returned a three-count indictment against Stalvey and twelve co-defendants. Count one charged all of the defendants with conspiracy to possess with intent to distribute and to distribute in excess of five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count two charged Stalvey with money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i), and count three charged another codefendant with a crime unrelated to this appeal.
 
 
 3
 Stalvey's case went to trial along with two codefendants on July 17, 1991. The government's first witness was Mark Lynn Lawing. After Lawing testified on direct examination, Stalvey moved for the production of a one-page letter Lawing had sent to the United States Attorney, Thomas Ashcraft, approximately two to three months prior to Stalvey's trial. At the time of Stalvey's request for production, the government was unable to supply a copy of the letter, and the court permitted the government to use the overnight recess to produce the letter. The following day, the government proffered to the court that the letter was inadvertently lost. The Assistant United States Attorney, H. Thomas Church, Special Agent Todd Elmore of the Internal Revenue Service, who had obtained a copy of the letter, and Lawing testified as to the contents of the letter. According to their testimony, the letter offered congratulations to Ashcraft for the Ellen Campbell case,* and indicated that Lawing had information regarding Stalvey's association with a marijuana bust.
 
 
 4
 The district court made a finding that the letter was inadvertently lost and denied the motion for mistrial because Stalvey had the equivalent of the letter through the testimony of Church, Elmore and Lawing. In the interest of fairness to the appellant, the district court gave Stalvey wide latitude in questioning Lawing on cross-examination. During cross-examination, Lawing admitted that he authored the letter and sent it to Ashcraft. He also indicated that he offered congratulations and further assistance against Stalvey.
 
 
 5
 The evidence at trial revealed that between February 1989 and February 1990 Stalvey became the exclusive supplier of cocaine for the conspiracy and supplied twenty-five to thirty-five kilograms to Lawing and Randy Todd Sweatt during this period. The government's theory of the case was buttressed by the testimony of numerous witnesses, the introduction of phone records, tax returns and photographs. In addition, the government presented extensive evidence that Stalvey lived a life diametrically opposed to his stated income.
 
 II
 
 6
 We review the district court's factual finding regarding Jencks Act material under the clearly erroneous standard. United States v. Escamilla, 467 F.2d 341 (4th Cir. 1972). A district court's denial to exclude testimony is reviewed under the abuse of discretion standard. Imperial Colliery Co. v. Oxy USA Inc., 912 F.2d 696, 705 (4th Cir. 1990).
 
 
 7
 In Jencks v. United States, 353 U.S. 657 (1957), the Supreme Court held that a criminal defendant had a due process right to inspect, for impeachment purposes, statements which had been made to government agents by government witnesses. Such statements were to be turned over to the defense at the time of cross-examination if their contents related to the subject matter of the witness' direct testimony and if a demand had been made for specific statements of the witness. Id. at 667-72. The Jencks Act, 18 U.S.C. § 3500, was enacted in response to the Jencks decision. The Act was intended to preserve the defendant's right to obtain access to materials which would aid in impeaching government witnesses. See S.Rep. No. 981, 85th Cong., 1st Sess., reprinted in 1957 U.S. Code Cong. & Admin. News 1861, 1862.
 
 
 8
 The Jencks Act provides that the government is only required to produce materials "[a]fter a witness called by the United States has testified on direct examination." 18 U.S.C. § 3500(b). In the present case, the government was required to produce Lawing's letter, but could not because it was inadvertently lost or destroyed. In the absence of bad faith or prejudice, the failure to disclose Jencks Act material will not result in reversal. See Arizona v. Youngblood, 488 U.S. 51 (1988) (unless a defendant can show bad faith on behalf of the government, failure to preserve evidence does not result in the denial of due process); United States v. Sanders, 954 F.2d 227 (4th Cir. 1992) (inadvertent erasure of bank videotape did not result in a denial of due process). In light of the absence of bad faith, the district court did not abuse its discretion in refusing to dismiss the case or strike Lawing's testimony for the inadvertent violation of the Jencks Act.
 
 
 9
 It is also apparent from the record that the defendant was allowed to cross-examine Lawing concerning the letter. This crossexamination was lengthy and broad in scope. During crossexamination, Lawing admitted authorship of the letter and that he sent it to Ashcraft. Finally, the jury was able to infer a motive to lie or bias, if it chose to do so, when Lawing testified that he offered congratulations to Ashcraft on the Ellen Campbell case in the letter and that he also had information on Stalvey concerning a marijuana bust. Thus, any negative effect on Stalvey was minimal; the appellant was able to establish what he would have established if he obtained the letter-that Lawing had an interest in the outcome of the trial. Thus, any disadvantage to Stalvey was dissipated through Lawing's crossexamination. Thus, as we view the record and the overwhelming evidence of guilt, any error that could have possibly flowed from the misplacement or destruction of the letter was harmless. Rosenberg v. United States, 360 U.S. 367 (1959); United States v. Curry, 512 F.2d 1299 (4th Cir.), cert. denied, 423 U.S. 832 (1975) (harmless error where it was evident that violation was unintentional, existence of material was made known to jury and defendant was able, through cross-examination, to demonstrate bias). Accordingly, the appellant's conviction is affirmed.
 
 AFFIRMED
 
 
 *
 The Ellen Campbell case involved a prosecution against a realtor who assisted Lawing in the purchase of a house on Lake Norman in the name of his parents using funds Lawing obtained from the sale of drugs. Lawing testified at that trial, and the letter that is the subject of this appeal was written shortly after the conclusion of that case