966 F.2d 1446
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
James Edward SMITH, a/k/a Smitty, a/k/a Dumptruck Smitty,
Defendant-Appellant.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Richard Leander SMITH, a/k/a Peter, Defendant-Appellant.
 Nos. 91-5574, 91-5575.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 6, 1992
Decided: June 10, 1992
 
 ARGUED: Gerald Thomas Zerkin, Gerald T. Zerkin & Associates, Richmond, Virginia, for Appellants. Thomas Ernest Booth, United States Department of Justice, Washington, D.C., for Appellee.
 On Brief: Kelley H. Brandt, Robert Godfrey, Gerald T. Zerkin & Associates, Richmond, Virginia, for Appellants. Richard Cullen, United States Attorney, William G. Otis, Assistant United States Attorney, Alexandria, Virginia, for Appellee.
 Before ERVIN, Chief Judge, NIEMEYER, Circuit Judge, and MURRAY, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Following a jury trial in the United States District Court for the Eastern District of Virginia, James E. Smith ("James") and Richard L. Smith ("Richard") were convicted of interstate travel to promote drug trafficking, 18 U.S.C. § 1952(a); possession with intent to distribute heroin, 21 U.S.C. § 841(a)(1); and use of a telephone to facilitate drug trafficking, 21 U.S.C. § 843(b). James was also convicted of possession of a firearm by a convicted felon, 18 U.S.C. § 922(g); and distribution of heroin, 21 U.S.C. § 841(a)(1). Richard was convicted of participation in a drug trafficking conspiracy; 21 U.S.C. § 846, distribution of heroin, 21 U.S.C. § 841(a)(1); and distribution of cocaine, 21 U.S.C. § 841(a)(1).[1] Evidence at trial indicated that James, while incarcerated on a drug-related conviction in the District of Columbia, had planned and managed a drug distribution operation in Richmond, Virginia. Richard participated in the buying and selling of drugs for the operation.
 
 
 2
 James and Richard appeal their convictions on a number of grounds. After a thorough review of the record, finding no reversible error, we affirm.
 
 I.
 
 3
 On March 16, 1988, prior to any charges being filed in the present case, James pled guilty in the District of Columbia to a charge of distributing narcotics and was sentenced to a term of 35 years in prison. James argues that the presentation, in this case, of extensive evidence regarding the conduct that formed the basis of that prior conviction violated the Double Jeopardy clause of the Fifth Amendment. The evidence was admitted by the trial judge under Federal Rule of Evidence 404(b) as probative of James' "usual method of operation," his intent with respect to distribution, and his relationship with various witnesses who testified against him.
 
 
 4
 James' Double Jeopardy claim is based on the Supreme Court's decision in Grady v. Corbin, 495 U.S. 508, 109 L. Ed. 2d 548 (1990). In that case, the Court held that "the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." Id., 109 L. Ed. 2d at 564. James argues that, in the present case, the Government used the conduct underlying his prior conviction as evidence to convict him of the present charges.
 
 
 5
 James overstates the holding in Grady. While the Government, in this case, uses prior offense conduct as evidence that James committed the present offense, the prior offense conduct is not an element of the present offense. As the above quoted language in Grady states, the Double Jeopardy clause is violated only when the Government uses a defendant's prior conduct "to establish an essential element of the offense charged." Id. The Grady Court cautioned, "This is not ... [a] 'same evidence' test." Id. This court has subsequently interpreted Grady, concluding that "Grady prohibits a successive prosecution only when the evidence of previously prosecuted conduct proves the 'entirety' of an essential element." United States v. Clark, 928 F.2d 639, 642 (4th Cir. 1991), petition for cert. filed, April 1, 1992. Clark noted that a broad interpretation of Grady, as urged by James, that would bar admission of previous offense conduct used merely as evidence of an element of the instant offense, would conflict with the holding of Dowling v. United States, 493 U.S. 342 (1990), a case which Grady did not purport to overrule. In Dowling, testimony under Rule 404(b) was deemed proper as tending to establish a defendant's identity, despite the fact that the testimony related to an incident for which the defendant had previously been tried and acquitted. As Clark points out, only the more restrictive reading of Grady, that previous offense conduct is barred by the Double Jeopardy Clause only when the conduct "proves the 'entirety' of an essential element" of the instant offense, is reconcilable with the Dowling decision. See also United States v. Felix, U.S., 1992 U.S. LEXIS 1954,*16-*17 (March 25, 1992) ("the introduction of relevant evidence of particular misconduct in a case is not the same as prosecution for that conduct" (footnote omitted)).
 
 
 6
 In addition, both James and Richard argue that the evidence of James' prior involvement with a major drug trafficking conspiracy was inadmissible under Rule 404(b). Rule 404(b) states:
 
 
 7
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....
 
 
 8
 Fed. R. Evid. 404(b). James and Richard argue that evidence regarding the prior conspiracy was introduced to reflect upon their character, or alternatively, that if the evidence was admissible under Rule 404(b), that it was too prejudicial to be admitted under Rule 403.
 
 
 9
 However, the record reflects that evidence regarding the prior conspiracy was introduced for proper purposes under Rule 404(b). The Government contended that the evidence of the prior conspiracy was necessary to establish James' and Richard's intent to distribute and their motives in undertaking certain actions and dealing with certain persons. Details of the operations also revealed similarities between the charged conduct and the previous operations-evidence of a common scheme or plan. The decision of the district court to admit Rule 404(b) evidence is discretionary and will not be disturbed unless it is arbitrary or irrational. See, e.g., United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir. 1988). In the present case, the asserted grounds for the admission of the Rule 404(b) evidence were reasonable and the district court was within its discretion to admit the evidence. Moreover, the district court instructed the jury,"You have heard quite a bit of testimony of prior misconduct on their[the defendants'] part, but they are not on trial for that, and the only crimes that you are responsible for is what is contained in that indictment." J.A. at 235. As this court has previously held, "[t]he jury is generally presumed to be able to follow" a trial court's evidentiary instructions. United States v. Jones, 907 F.2d 456, 460 (4th Cir. 1990), cert. denied, 112 L. Ed. 2d 675 (1991). In this case, the trial court's instructions on the prior acts evidence properly confined the jury's focus to consideration of the evidence in light of the purposes for which the evidence had been introduced.
 
 
 10
 James argues that, at the very least, the district court should have severed his trial from that of the other defendants. He contends that the prior acts evidence was most relevant to the drug conspiracy charge. Because the drug conspiracy count had been dismissed with regard to James, and the evidence related primarily to James' prior activities, James argues that he was particularly prejudiced by admission of that evidence. He contends, therefore, that once the trial court made the decision to admit the prior acts evidence, fairness required that his trial be severed from that of the other defendants.
 
 
 11
 This argument fails because, as discussed above, James' prior acts were admissible against him under Rule 404(b). Generally, persons indicted together should be tried together, unless such trial would result in a miscarriage of justice. United States v. Pryba, 900 F.2d 748, 758 (4th Cir.), cert. denied, 112 L. Ed. 2d 258 (1990). Because the evidence of which James complains would be admissible against him even at a severed trial, James cannot begin to show that the joint trial constituted a miscarriage of justice.
 
 II.
 
 12
 James argues that the trial court erred by not granting his motion to dismiss the charges or, in the alternative, to suppress evidence, on the grounds that evidence used against him was derived from testimony he had provided under a grant of immunity. First, James claims that the Virginia authorities had an obligation, under the terms of Kastigar v. United States, 406 U.S. 441 (1972), to prove that none of the evidence that was used against him was derived from the assistance he had earlier provided to the District of Columbia prosecutors. Under the terms of his plea agreement in the District of Columbia, signed February 8, 1988, James was granted transactional and use immunity for uncharged crimes. However, the terms of the agreement specifically provided:
 
 
 13
 Nothing in this agreement shall be construed to protect Mr. Smith in any way from prosecution for: ... any offenses committed by him after the date of this agreement. The information and documents that he discloses to the Government pursuant to this agreement may be used against him in any such prosecution.
 
 
 14
 J.A. at 70. The trial court found that (with the exception of the drug trafficking conspiracy count against James which was dismissed on Double Jeopardy grounds) the charges in the present case were all "new crimes" under the terms of the plea agreement. The record supports this finding. Thus, by the terms of the plea agreement, the Government was entitled to use any information provided by James in the prosecution of these crimes. The Government bore no burden to show that the D.C. prosecutors had not shared information with the Virginia authorities.
 
 
 15
 James also was granted use immunity by a letter from Assistant United States Attorney Liam O'Grady, dated April 21, 1988. That letter extended use immunity to James in exchange for his agreement to "cooperate fully" with investigators with respect to their ongoing investigation concerning drug trafficking in Virginia. However, the district court made an explicit factual finding that James breached this agreement. Contrary to James' assertion, this finding was not based on the district court's failure to distinguish between the meaning of "active" and "full" cooperation, as commonly used in plea agreements.[2] Instead, even interpreting "full" cooperation as James urges, the district court's factual finding that "Smith had considerable knowledge about Richmond narcotics that he did not share with the authorities" is dispositive of whether James had complied with the plea agreement. See United States v. Smith, 759 F. Supp. 304, 309 (E.D. Va. 1991). Having breached the terms under which AUSA O'Grady offered him immunity, James cannot seek shelter under that agreement. Because James was not entitled to immunity, this court need not address the issue of whether the prosecution met its burden, under Kastigar, of proving that its evidence was not derivative of evidence obtained under a grant of use immunity.
 
 III.
 
 16
 Richard makes several arguments regarding the admission of inculpatory statements that he made prior to his arrest. The facts regarding these statements are largely undisputed. Richmond Police Detective D.R. Carter went to Richard's home seeking to obtain his cooperation in the investigation of a related drug trafficking case. Richard was not home, so Detective Carter left a note on the front door asking Richard to contact Carter, stating that Richard "will be able to save himself some serious problems by talking with us." J.A. at 114. Several days later, Richard called Carter. Carter told Richard that he was under investigation, that the agents wanted his cooperation, and that he should hire a lawyer. Instead, Richard came to the FBI office and met with Carter and FBI agent Terry Carney. The officers informed Richard that he was not under arrest and that he could leave at any time. The officers also advised Richard of his Miranda rights. During the course of the ensuing conversation, Richard admitted that he had sold some cocaine and heroin during the summer of 1989.
 
 
 17
 First, Richard argues that Detective Carter's note should be interpreted as a binding agreement, and that a reasonable interpretation of the note's assurance that Richard could "save himself some serious problems" was as a promise that Richard could avoid prosecution by talking with Detective Carter. This position has no merit. No reasonable person could interpret Carter's note as a plea agreement binding upon the Government. The case Richard relies upon, Cooper v. United States, 594 F.2d 12 (4th Cir. 1979), to the questionable extent that portions of the opinion may have survived the Supreme Court's conflicting decision in Mabry v. Johnson, 467 U.S. 504 (1984), pertained to an agreement proffered by the Government that was "specific, unambiguous and not unreasonable on its face." 594 F.2d at 19. Obviously, Detective Carter's note does not meet these criteria. Cf. Plaster v. United States, 789 F.2d 289, 292-93 (4th Cir. 1986) (dicta indicating Cooper was overruled by Mabry ).
 
 
 18
 Alternatively, Richard argues that the note was coercive, tainting his subsequent inculpatory statements and rendering them inadmissible under the Fifth Amendment. However, even if the note could be read as implicitly threatening, the taint of the note clearly does not continue past Richard's voluntary appearance at the FBI office, the assurance that he was free to leave, and the agents' advice that Richard obtain an attorney prior to making a statement. See, e.g., United States v. Pelton, 835 F.2d 1067, 1071 (4th Cir. 1987) ("voluntariness of a statement is to be determined from the 'totality of the circumstances' "), cert. denied, 486 U.S. 1010 (1988); United States v. Fazio, 914 F.2d 950, 956 (7th Cir. 1990) (suspect's voluntary appearance at police station is evidence of voluntariness of his statement).
 
 
 19
 Richard further argues that the Government did not prove, by the requisite level of proof, that he voluntarily waived his Miranda rights. However, Miranda protections apply only to custodial interrogation. See, e.g., Berkemer v. McCarty, 468 U.S. 420 (1984). As discussed above, Richard was under no coercion to provide a statement, and was free to terminate the interview and leave the presence of the officers at any time. As a result, the police were under no obligation to even provide Richard with the Miranda warnings, and the Government bears no burden to show a voluntary waiver of these protections.
 
 
 20
 Finally, Richard argues that, having made the decision to admit his inculpatory statements, the trial judge was under the obligation to instruct the jury that they could only consider the statements if they found them to be voluntary. See United States v. Inman, 352 F.2d 954 (4th Cir. 1965). The continuing vitality of the Inman ruling has been called into question by the Supreme Court's subsequent decision in Lego v. Twomey, 404 U.S. 477, 489-90 (1972) (suggesting that defendant is not entitled to have jury decide voluntariness issue anew after preliminary judicial determination, but basing the decision, in part, on the fact that the issue was not raised below). See United States v. Buie, 538 F.2d 545, 547 (4th Cir. 1976) (declining to decide whether Lego overruled Inman on this issue).
 
 
 21
 Since Inman, Congress has enacted a legislative framework for the admission of confessions, requiring 1) an initial judicial determination of voluntariness, 2) admission, before the jury, of all relevant evidence on the issue of voluntariness, and 3) an instruction to the jury to accord the confession "such weight ... as the jury feels it deserves under all the circumstances." 18 U.S.C. § 3501. In light of the subsequent judicial and legislative developments in this area of the law, Inman is of dubious validity at best. Regardless of its status, however, there is no question that the jury instructions mandated by both Inman and section 3501 are applicable only if the defendant has contested, at trial, the voluntariness of his confession. See, e.g., United States v. Sebetich, 776 F.2d 412, 422 n.16 (3d Cir. 1985), cert. denied, 484 U.S. 1017 (1988). In this case, there is nothing in the record to indicate that Richard made the voluntariness of his confession an issue at trial. As a result, it was not error for the trial court to have declined to instruct the jury on this matter.
 
 IV.
 
 22
 Finally, James and Richard contend that the outcome of their case was biased by the district court's jury instructions. In particular, the defendants dispute the district court's instructions relating to the Government witnesses testifying pursuant to plea agreements. The trial judge instructed the jury, "[I]t doesn't make any difference how hard the defendant pleads for reduction of sentence and how much the government says he is cooperating, and how highly they think of the witness' testimony, it is the judge's sole responsibility to determine whether there will be a reduction of sentence." J.A. at 239. James and Richard had sought to discredit damaging testimony by arguing that the Government witnesses had self-interested motives to exaggerate their testimony to gain the Government's favor. They argue that the above instruction misled the jury about the strength of that motivation by downplaying the Government's potential to affect the trial court's sentencing decision.
 
 
 23
 This argument has no merit. First, the district court's instruction was an accurate representation of the law. Second, the district court had previously instructed the jury on witness credibility in general, indicating that the testimony of former accomplices who entered plea agreements with the Government should be considered with "caution." J.A. at 237. Read as a whole, the court's jury instructions properly conveyed to the jury the appropriate concerns to consider in evaluating the credibility of the Government witnesses. See United States v. Curry, 512 F.2d 1299 (4th Cir.) (not"plain error" for trial court to refuse to give specific credibility instruction pertaining to witnesses testifying pursuant to grant of immunity where court instructed on witness credibility in general), cert. denied, 423 U.S. 832 (1975).
 
 V.
 
 24
 We find no error in the proceedings before the district court. For the foregoing reasons, the convictions of James and Richard are hereby
 
 
 25
 AFFIRMED.
 
 
 
 [1]
 The jury acquitted James on one count of using a telephone to facilitate a drug transaction and acquitted Richard on one count of distribution of heroin. The district court dismissed a charge of participation in a drug trafficking conspiracy against James. The jury acquitted co-defendant Olivia Bratton of all charges
 
 
 [2]
 James contends that in the specialized context of plea agreements "full" cooperation means merely the provision of information, in contrast to "active" cooperation which includes affirmative action to aid law enforcement authorities in the investigation and prosecution of criminal activity. We express no opinion on the validity of this distinction