**In re Barry W. LEVINE.**

No. 92–3262.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 7, 1994.

Decided June 29, 1994.

Rehearing and Suggestion for Rehearing
In Banc Denied Sept. 15, 1994.

William Bradford Reynolds, Washington, DC, argued the cause, for appellant. On brief was Elaine Metlin, Washington, DC. John T. Kotelly, Washington, DC, also entered an appearance.

Daniel S. Gelber, Asst. U.S. Atty., Miami, FL, of the bar of Fla., argued the cause for

appellee pro hac vice, by special leave of the court. On brief were Eric H. Holder, Jr., U.S. Atty., Arlin M. Adams, Independent Counsel, and Roscoe C. Howard, Jr., and Dianne J. Smith, Associate Independent Counsel, Washington, DC. John R. Fisher, Asst. U.S. Atty., Washington, DC, also entered an appearance.

Before BUCKLEY, GINSBURG and HENDERSON, Circuit Judges.

Opinion for the court filed PER CURIAM.

PER CURIAM:

Appellant Barry W. Levine represented Leonard E. Briscoe in the district court in *United States v. Briscoe, et al.*, a multi-defendant criminal trial. On November 19, 1992, thirty-four days into trial, the trial judge summarily held Levine in contempt. While cross-examining a government witness, Levine stated aloud and in the presence of the jury that the witness's testimony was changing. The judge immediately held Levine in contempt.

In his contempt order, the trial judge stated that Levine's conduct throughout the trial "cumulatively precipitated" the finding of contempt. While noting that he did not list all instances of Levine's misbehavior, the judge did cite examples of Levine's conduct during trial in the two weeks preceding the contempt finding. The examples constituted approximately thirty pages of the court's thirty-eight page order. *See* Joint Appendix (JA) at 1–38. Moreover, the order incorporated by reference the entire trial transcript and the judge emphasized that even the transcript could not "capture adequately the tone and behavior of Mr. Levine." *Id.* at 5.

Levine seeks a reversal of the contempt conviction on two grounds. First, he contends that the evidence was insufficient to support a finding of contempt. Second, he maintains that the trial judge became personally embroiled in the controversy and therefore Levine was entitled to a hearing

before another judge. For the reasons set forth below, we affirm his contempt conviction.

## I. Sufficiency of Evidence

Levine correctly observes that only the "least possible power adequate to the end proposed should be used in contempt cases." *In re Holloway*, 995 F.2d 1080, 1087 (D.C.Cir.1993) (internal quotation omitted), *cert. denied,* —— U.S. ——, 114 S.Ct. 1537, 128 L.Ed.2d 190 (1994). He fails to recognize, however, that when the presiding judge makes serious and repeated efforts to require a lawyer to abide by the judge's orders, it is difficult to discern "what lesser remedy [the judge] could reasonably have employed." *Id.* Thus, while contempt may be a severe remedy, it is appropriate in some cases. We believe this to be such a case.

The trial judge convicted Levine under 18 U.S.C. § 401; he did not, however, specify the subsection Levine had violated. Nonetheless, because the judge found that Levine "continually defied the Court's explicit and direct orders," JA at 2, it is apparent that the judge applied subsection 401(3),[1] which provides that a court may punish as contempt "[d]isobedience or resistance to [the court's] lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(3). We recently enunciated the two elements necessary to make out a subsection 401(3) violation. First, the alleged contemnor must disobey or resist a "lawful writ, process, order, rule, decree, or command" of the court. *Holloway*, 995 F.2d at 1082 (quoting 18 U.S.C. § 401(3)). Second, the disobedience must be willful. *Id.* If "a fair-minded and reasonable trier of fact [could] accept the evidence as probative of [both of these elements] beyond a reasonable doubt," *id.*, we will affirm the conviction.

The conduct at issue involved Levine's attempt to admit into evidence a three-page audit certification letter, referred to as "Briscoe 46," during his cross-examination of a

---

1. Because we conclude that Levine was sanctioned under subsection 401(3), his arguments regarding subsection 401(1) are irrelevant. It is not necessary for us to find, as subsection 401(1) requires, that Levine's behavior actually "ob-

struct[ed] the administration of justice." 18 U.S.C. § 401(1); *see Holloway*, 995 F.2d at 1082 n. 1 (declaring obstruction-of-justice inquiry irrelevant to subsection 401(3) analysis).

government witness. On the morning of November 19, during a bench conference, the court ruled the document inadmissible and refused to redact it. *See* JA at 31–32. Resuming the cross-examination, Levine asked the witness a series of questions related to Briscoe 46. The judge sustained the government's objection to one of the questions. *Id.* at 33–34. Levine pursued his questioning and again asked at a bench conference that he be allowed to introduce Briscoe 46. The judge again refused. *Id.* at 34–35. Immediately thereafter, Levine approached the witness and showed her Briscoe 46. The government again objected, Levine asserted that he wanted to use Briscoe 46 to refresh the witness's memory and the court once more sustained the objection and told Levine to move on. *Id.* at 35. Nevertheless, Levine returned to the topic, asking whether an audit had been performed. After the government objected and the court iterated its ruling on the inadmissibility of Briscoe 46, Levine, in a "loud, argumentative tone," stated in front of the jury: "I want to get it straight, your Honor, because the witness is changing the testimony and I want to get it straight." The judge then summoned Levine to the bench, held him in contempt and sentenced him to four hours' incarceration that evening in the courthouse cellblock. *Id.* at 35–36.

■ Levine suggests that he did not disobey any lawful order of the court because the court's orders throughout the trial, and especially his ruling regarding the Briscoe 46 document, were unclear. We disagree. The court's ruling that Briscoe 46 was inadmissible, as well as his orders repeated throughout the trial not to argue to the jury in his examination of witnesses, were abundantly clear to put Levine on notice that his conduct was improper. "Whether an order is clear enough depends on the context in which it is issued and the audience to which it is addressed." *Holloway,* 995 F.2d at 1082. No one questions that the audience to whom the court addressed its order—Levine—was a trial lawyer of many years' experience. JA at 2. Moreover, the context in which the warnings and evidentiary rulings were made makes them unmistakable. The judge expressly and repeatedly ruled that Briscoe 46

was inadmissible and ordered Levine to pursue a different topic. *Id.* at 31–32, 33–34, 34–35, 35. The judge's admonitions included a specific contempt warning. *See id.* at 33. Moreover, on numerous occasions throughout the trial the judge admonished Levine not to argue to the jury and instructed him to request a side bar conference if he wished to argue an evidentiary matter. *See, e.g., id.* at 6, 16–17, 17. Given the numerous warnings, their specificity and their intended audience, we find Levine's vagueness argument unavailing.

■ Levine argues extensively the merits of the admissibility of Briscoe 46 and its importance. The court's ruling on the admissibility of evidence is not relevant to our contempt finding, however. If Levine disagreed with an evidentiary ruling, he was free to preserve the matter for appeal. *See Holloway,* 995 F.2d at 1088 (citing *Sacher v. United States,* 343 U.S. 1, 9, 72 S.Ct. 451, 455, 96 L.Ed. 717 (1952)). While we do not intend to chill a lawyer's efforts to advocate zealously for his client, we must ensure the court's authority to make the rulings necessary to the orderly and efficient administration of justice. *Cf.* Fed.R.Evid. 611(a) (empowering court to control mode and order of interrogating witnesses). When the court issues an order circumscribing a lawyer's conduct and informs him that failure to abide by its order will result in a contempt citation, the lawyer must cease the conduct or bear the consequences.

■ As to the second element of the subsection 401(3) violation—willfulness—we conclude that a fair-minded and reasonable trier of fact could find beyond a reasonable doubt that Levine acted willfully. "[W]illfulness may be inferred if a lawyer's conduct discloses a reckless disregard for his professional duty." *Holloway,* 995 F.2d at 1082 (internal quotations omitted); *see also United States v. Greyhound Corp.,* 508 F.2d 529, 531–32 (7th Cir.1974) (willful intent is "a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful"). The cited conduct itself must be contumacious but "the analysis of intent properly encompasses the contemnor's be-

havior in related incidents such as disobedience or resistance to other orders of the court." *Holloway*, 995 F.2d at 1082. Here, the trial court could unquestionably conclude that the cited conduct was willful: the court repeatedly ruled Briscoe 46 inadmissible and ordered Levine to cease his questions regarding Briscoe 46 but Levine simply refused to comply. Levine intentionally circumvented the court's orders in order to make the jury aware of a document the court had ruled inadmissible. His conduct recalls similar conduct we found contumacious in *Holloway*. There, the lawyer attempted to elicit testimony about a document the witness had not seen before. After the court warned him that the witness could not testify about a document he did not recognize, the appellant asked the witness: "Have you seen it now? Have you looked at it just now?" *Id.* at 1084. As we noted in *Holloway*, the appellant's "devious pretense that it would be enough if [the witness] saw the document in court that very day ... points strongly in the direction of willfulness." *Id.* at 1085. Likewise, Levine's unrelieved efforts to elicit testimony regarding Briscoe 46 in the face of the court's repeated rulings denying admissibility manifest conduct that a reasonable fact-finder could adjudge as willful.

Additionally, the record is full of instances of Levine's disobedience or resistance to orders of the court. Despite the judge's warnings not to argue to the jury through questions, Levine persisted in doing so. *See* JA at 5–6. Levine attempted to put into evidence material the court had ruled inadmissible. *See id.* at 7–11. He frequently repeated questions to which an objection had already been sustained. *See id.* at 12–13, 16–17, 22, 25–26. Such wholesale disobedience is strong evidence of a pattern of willful disregard for the court's authority, disregard that cannot be fairly characterized as honest but aggressive lawyering.

■ Levine next argues that the trial judge improperly used the summary procedures of Federal Rule of Criminal Procedure 42(a) instead of the notice and hearing procedures of Rule 42(b) in holding him in contempt. Rule 42(a) permits a summary adjudication of criminal contempt "if the judge certifies that the judge saw or heard the conduct constituting contempt and that it was committed in the actual presence of the court." Fed.R.Crim.P. 42(a). Use of Rule 42(a)'s summary procedures is reviewed deferentially, for abuse of discretion. *See Holloway*, 995 F.2d at 1086; *United States v. Meyer*, 462 F.2d 827, 843 (D.C.Cir.1972). The trial judge certified that Levine's conduct was "committed in the actual presence of the court and was seen or heard by the court during the trial of this case." JA at 1. He also noted that summary procedures were necessary—given the length of the trial and the number of defendants and lawyers— "to preserve order and justice in the courtroom, to protect [the] Court's authority, and to prevent a mistrial." *Id.*

In *Holloway*, we approved summary contempt proceedings because the trial judge had warned the defendant to heed her rulings on pain of contempt; had repeated several times the threshold showing necessary to proceed with a particular line of questioning; and had warned the defendant that his continued inquiries violated the court's order. *Holloway*, 995 F.2d at 1087. The same factors appear here. The judge frequently warned Levine to heed his rulings and threatened him with contempt, *e.g.*, JA at 33; the judge told Levine that the witness could not testify about Briscoe 46, *id.* at 31; and the judge reminded Levine several times that he had already decided the inadmissibility of Briscoe 46. *Id.* at 32, 34. Despite his diligent efforts, none of his warnings to Levine worked—Levine continued to disregard the court's orders and evidentiary rulings. In our view, Levine's blatant disregard for the court's authority, thereby threatening its ability to ensure an orderly and fair trial, justified a summary finding of contempt; we therefore find no abuse of discretion.

## II. Judge's Alleged Personal Involvement

■ Levine also argues that the hearing should have been referred to another district judge because the trial judge was "personally embroiled" in the controversy with Levine and adopted an "adversary posture with respect to [him]." *See United States v. Meyer*, 462 F.2d 827, 841 (D.C.Cir.1972). During at

least three bench conferences Levine suggested that the court was favoring the government in its evidentiary rulings, *see* JA at 11–12, 14, 22; in its contempt order the district court interpreted these comments as an accusation of bias. *See id.* at 11, 14. Although Levine questioned the trial judge's impartiality, there is nothing in the record indicating any bias or partiality on the trial judge's part; on the contrary, the record manifests an extremely patient district judge ultimately driven to use his contempt power. In any event, our decision in *Meyer* distinguishes between a contempt citation issued *after* trial and one issued summarily under Rule 42(a) *during* trial; a citation issued after trial can trigger the judge's recusal if the judge's integrity is attacked or if the contempt charged otherwise "involves disrespect to or criticism of" the judge. Fed. R.Crim.P. 42(b). As *Meyer* stated, however, the situation is different if the contempt occurs during trial:

> [I]t is clear that if the trial judge deems summary conviction necessary to preserve order ... summary conviction is proper. *And this is presumably true even if the judge has evidenced personal embroilment or has been personally attacked.* ... [T]he need to preserve order, by itself, not only supports summary disposition, but also outweighs the possibility of bias on the part of the trial judge.

*Meyer*, 462 F.2d at 843 (emphasis added); *see also Sandstrom v. Butterworth*, 738 F.2d 1200, 1212–13 (11th Cir.1984) (noting, in dicta, that "when bias is presumed solely from the contemnor's personal attacks on the judge, this potential bias does not overcome the need for judicial authority to maintain courtroom order") (internal quotation omitted), *cert. denied*, 469 U.S. 1109, 105 S.Ct. 787, 83 L.Ed.2d 781 (1985). We do not mean to suggest that a showing of bias may never suffice to overturn a Rule 42(a) contempt citation. As *Sandstrom* noted, "[i]f after examining the record, the reviewing court forms a definite and firm conviction that the presiding judge harbored ... bias towards the contemnor [that would prevent the fair administration of justice], the contempt citations must be overturned." *Sandstrom*, 738 F.2d at 1214. Nothing in this record, however, indicates that the judge was personally upset by or indeed anything but patient with Levine. Therefore, the necessity to discipline Levine in order to conduct an orderly trial outweighs any potential bias resulting from the lawyer's criticism of the court.

All of the events necessary to establish contempt occurred in this case. Levine disobeyed the court's orders, the orders were clear and unequivocal and Levine acted willfully. Because the district judge witnessed the contumacious acts, and because he repeatedly warned Levine of the possibility of contempt, he was justified in adjudging Levine's contempt summarily. Finally, the judge was not personally embroiled in the matter nor did he adopt an adversary posture with respect to Levine. Accordingly, the conviction is

*Affirmed.*