In re Daniel E. ELLENBOGEN,
Appellant.

No. 94–3175.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 12, 1995.

Decided Dec. 22, 1995.

**154**

R. Stan Mortenson argued the cause, for appellant, with whom David R. Fontaine, Henry W. Asbill and L. Barrett Boss, Washington, were on the briefs.

E. Vaughn Dunnigan, Assistant United States Attorney, argued the cause, for appellee, with whom Eric H. Holder, Jr., United States Attorney, John R. Fisher, Roy W. McLeese, III, and Lynn Leibovitz, Assistant United States Attorneys, Washington, were on the brief.

Before SILBERMAN, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

The District Court summarily convicted appellant Daniel E. Ellenbogen for criminal contempt of court under 18 U.S.C. §§ 401(2) and (3), imposing a fine of $1,000. After his motion for reconsideration failed, Ellenbogen filed this appeal, claiming that (1) summary contempt procedures were inappropriate in this case and (2) the record does not contain sufficient evidence to support his contempt conviction. Because we hold that the District Court did not abuse its discretion in employing summary contempt procedures and because the record unambiguously shows that Ellenbogen violated a clear ruling issued by the court, we affirm Ellenbogen's contempt conviction.

## I. Factual Background

Daniel E. Ellenbogen served as court-appointed co-counsel for Mark Hoyle, one of seven defendants tried on drug, murder, conspiracy, kidnapping and other charges stemming from their alleged participation in the "Newton Street Crew" narcotics distribution organization. Several other Newton Street Crew defendants had already been tried in previous trials. Some had been acquitted. Hoyle's trial lasted from May 3, 1994, until October 13, 1994. Soon after it began, on May 19, 1994, the District Court granted the government's *in limine* motion to prevent defense counsel from cross-examining government witness Lazaro Santa Cruz about any of the verdicts in the prior Newton Street Crew trials, particularly the trials of Demi Sanya and Michael Jones. Santa Cruz, originally a defendant in one of the cases, had traded his testimony against his co-defendants in the previous trials for a lenient sentence.

On May 24, 1994, five days after the granting of the *in limine* motion, the witness Santa Cruz had completed his direct testimony and undergone cross examination. Defense counsel had thoroughly examined Santa Cruz about his cooperation with the government. The prosecution returned to that subject on redirect and asked, "[w]hen you talked about cooperation you made the statement, 'I am not a recruiter.' What did you mean by that?" After a more direct answer to the question, to the effect that he was not "trying to draft" other people to the government and engage in "snitching" he volunteered that another defendant who did not want to cooperate had gone to trial "and he lost." Jensen Barber, co-counsel with Ellenbogen for defendant Hoyle, asked if that meant that the defense could now question witnesses about acquittals in other trials, but the court responded in the negative. The following day, Ellenbogen submitted a suggested cautionary statement to the jury providing that Santa Cruz's statement about the outcome in another trial was irrelevant to the Hoyle case. The court gave the instruction.

Over four months went by without further discussion of the admissibility of the trial outcomes of the other Newton Street Crew

defendants. Then, in September 1994, the prosecutor solicited testimony from Santa Cruz on redirect examination about Santa Cruz's testimony in other trials. Santa Cruz stated that he had testified in many other trials, and that his testimony had always been recorded by a stenographer. Ellenbogen, on recross examination, then questioned Santa Cruz about the other trials:

BY MR. ELLENBOGEN:

Q. Mr. Howes [the prosecutor] asked you about testifying in other proceedings in other cases, didn't he?

A. Yes, he did.

Q. One of those cases involved Demi Sanya, right?

A. That's correct.

Q. And he was acquitted, wasn't he?

MR. HOWES: Objection.

THE COURT: Sustained. Sustained.

MR. ELLENBOGEN: I have nothing further, Your Honor.

The court instructed the jury to disregard Ellenbogen's question, but denied the government's request to approach the bench. It admonished the other defense attorneys to avoid improper questions, then let the prosecution's rebuttal case continue. At a bench conference after the jury was excused, the court denied the prosecution's request that information on all the prior trials of Newton Street Crew defendants be made available to the jury, but summarily found Ellenbogen in criminal contempt and fined him $1,000.

Ellenbogen filed a motion for reconsideration of the contempt conviction in which he admitted to making a mistake by asking his question, but stated that he did not do it intentionally and that his confusion about the propriety of asking it excused his action. In any case, he argued, there were lesser sanctions that were more appropriate than criminal contempt. In its order denying the reconsideration motion, the District Court found two grounds for contempt. First, Ellenbogen had violated 18 U.S.C. § 401(2) by misbehaving as an officer of the court in his "official transactions." Second, he had violated § 401(3) by willfully disobeying or resisting a lawful order of the court. Three findings supported the willfulness determina-

tion. First, there was no "legitimate relevance of Demi Sanya's acquittal ... to any issue in the case." Second, Ellenbogen himself had drafted the curative instructions for the jury on the irrelevance of Santa Cruz's May 19 testimony about a conviction in another trial. Third, the court commented on Ellenbogen's demeanor:

> From the moment he rose to address Santa Cruz his gaze never left mine; he never looked at the witness. His expression was unmistakably that of one who intended to act in defiance of the Court's authority, and his tone of voice confirmed it. He put his questions to the witness quickly, and adroitly framed them so as to give no warning sufficient to enable a timely objection to be made or to alert the Court to the need for a cautionary admonition. Finally, he offered no defense of the offending question when an objection was belatedly forthcoming. He had accomplished his purpose by placing the fact of Demi Sanya's acquittal before the jury by his question alone; an answer was unnecessary for his purpose.

The court also noted that "[f]atigue, stress, and frustration may well have played a part in inducing him to do what he did." Ellenbogen appeals from his contempt conviction, claiming that the court's use of summary contempt procedures was inappropriate and that the record contains insufficient evidence to support his conviction.

## II. Legal Analysis

### A. Appropriateness of Summary Contempt Procedures

■ The Federal Rules of Criminal Procedure provide that a judge may summarily convict an attorney of criminal contempt when he certifies that (1) he "saw or heard the conduct constituting the contempt" and (2) the conduct occurred "in the actual presence of the court." FED.R.CRIM.P. 42(a). When contemptuous activity does not fall within these parameters, it is subject to prosecution in a hearing under FED.R.CRIM.P. 42(b). In the instant case, the District Court elected to use the summary procedures of Rule 42(a) to convict Ellenbogen of contempt,

and Ellenbogen argues on appeal that this decision was inappropriate.

■ The Supreme Court has stated that Rule 42(a)'s summary contempt procedures are appropriate only for a "narrow category" of offenses "where instant action is necessary to protect the judicial institution itself." *Harris v. United States*, 382 U.S. 162, 165, 167, 86 S.Ct. 352, 354, 356, 15 L.Ed.2d 240 (1965). Ellenbogen argues that his case does not fit into this narrow category for several reasons. First, Ellenbogen argues that he did not openly defy the district judge by repeating his improper question or challenging the court's authority to rule out the question. However, Ellenbogen mischaracterizes the nature of his conduct. When he asked a question in open court that the judge had specifically ruled out of bounds, Ellenbogen openly defied the authority of the court. No other conclusion is possible, especially since Ellenbogen asked his question, "And he was acquitted, wasn't he?" in such a manner that the answer was revealed in the question, preventing the prosecution from making an effective objection.

We do not mean by this to suggest that there was anything inherently improper in the leading question asked on cross. We are aware that this is a proper and indeed the most common form of questioning on cross examination. However, when the leading question supplies information which the court has expressly ordered the attorney not to present before the jury, the use of that form of questioning highlights the apparently deliberate nature of the transgression. Particularly is this so where the question is not only improper because of the court's explicit order, but would have been objectionable in any event—such as a question inquiring about the inadmissible fact of the verdict in another trial.

■ Ellenbogen also argues that summary procedures were unnecessary since the district judge was not forced to cite Ellenbogen immediately after he asked his improper question. Instead, the court allowed the other defense attorneys to finish their cross examinations. "[W]here conviction and punishment are delayed, 'it is much more difficult to argue that action without notice or cult to argue that action without notice or

hearing of any kind is necessary to preserve order and enable [the court] to proceed with its business.'" *Taylor v. Hayes*, 418 U.S. 488, 498, 94 S.Ct. 2697, 2703, 41 L.Ed.2d 897 (1974) (quoting *Groppi v. Leslie*, 404 U.S. 496, 504, 92 S.Ct. 582, 587, 30 L.Ed.2d 632 (1972)). However, summary contempt procedures are not absolutely limited to cases where they are needed to restrain lawyers in mid-sentence. In the context of this lengthy, multiple-defendant case, the district judge's delay in citing Ellenbogen demonstrates "only admirable restraint by the trial judge to minimize the risks of adverse effects of the contempt citation upon the conduct of the trial." *United States v. Stratton*, 779 F.2d 820, 836 (2d Cir.1985), *cert. denied*, 476 U.S. 1162, 106 S.Ct. 2285, 90 L.Ed.2d 726 (1986), *and cert. denied, Parness v. United States*, 477 U.S. 906, 106 S.Ct. 3277, 91 L.Ed.2d 567 (1986).

■ Finally, Ellenbogen stresses that the judge placed heavy emphasis on Ellenbogen's demeanor toward the court in upholding the contempt citation. Where the contemnor is charged with showing disrespect to a judge, it is particularly important to have a different judge conduct a hearing on the contempt charge under Rule 42(b). *United States v. Meyer*, 462 F.2d 827, 841 (D.C.Cir. 1972) ("The same factor—the possibility of personal bias—militates in favor of *both* disposition by a different judge and nonsummary proceedings."). However, the record does not demonstrate that the judge was "personally embroiled" in the dispute with Ellenbogen, so there was no need to consider referring the matter to another judge. *See In re Levine*, 27 F.3d 594, 597–98 (D.C.Cir. 1994) (discussing the possibility of bias on the part of the trial judge in the context of Rule 42(a) proceedings). In addition, other policy concerns weigh heavily in favor of the use of summary contempt procedures against Ellenbogen in light of the nature of his contemptuous conduct:

> [W]hen contemptuous conduct has occurred before the judge in open court, it would be a useless formality and a waste of resources to indulge in a full hearing, because the judge, having witnessed the conduct, is competent to interpret the facts

and apply the law—[this is] the waste of resources justification.

*Meyer,* 462 F.2d at 831. This waste of resources justification carries special weight in this case since the district judge's findings rested in significant part on his evaluation of Ellenbogen's demeanor.

In considering a district court's decision to employ Rule 42(a)'s summary contempt procedures instead of Rule 42(b)'s notice-and-hearing procedures, we review only for abuse of discretion. *In re Holloway,* 995 F.2d 1080, 1086 (D.C.Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1537, 128 L.Ed.2d 190 (1994). In this case, we hold that the obvious strength of the waste of resources justification in combination with Ellenbogen's intentional violation of the District Court's clear ruling bring the use of Rule 42(a)'s procedures within the discretion of the District Court. Ellenbogen's arguments against the use of Rule 42(a) are not strong enough to take that decision outside of the District Court's discretion.

### B. Sufficiency of the Evidence

■ "In deciding whether the evidence is sufficient to support a contempt conviction, we use the familiar standard for any criminal conviction, asking whether 'a fair-minded and reasonable trier of fact [could] accept the evidence as probative of a defendant's guilt beyond a reasonable doubt.'" *In re Holloway,* 995 F.2d 1080, 1082 (D.C.Cir.1993) (quoting *In re Joyce,* 506 F.2d 373, 376 (5th Cir.1975)), *cert. denied,* —— U.S. ——, 114 S.Ct. 1537, 128 L.Ed.2d 190 (1994); *accord In re Levine,* 27 F.3d 594, 595 (D.C.Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1356, 131 L.Ed.2d 214 (1995). The contested contempt conviction in this case falls under 18 U.S.C. § 401(3), which prohibits "[d]isobedience or resistance to [the court's] lawful writ, process, order, rule, decree, or command."[1] To support a contempt conviction under § 401(3), the record must demonstrate willful disobedience or resistance on the part of the

contemnor. *Levine,* 27 F.3d at 595. In this case, the court granted the prosecution's *in limine* motion that was specifically directed to the acquittal of Demi Sanya. The district judge stated, "The motion is granted. The result of that trial is not admissible." There is no question that Ellenbogen understood the ruling. After the first inadvertent transgression, he drafted the instruction effectuating it for the jury—an instruction which the judge delivered. In the face of the clear prior ruling, Ellenbogen asked Santa Cruz about the verdict in Demi Sanya's case, including the answer in his question, "And he was acquitted, wasn't he?" It would be difficult to construct a more obvious example of a willful violation of a court ruling.

■ Nevertheless, Ellenbogen makes several arguments against the sufficiency of the evidence, some of which deserve attention. First, he claims that he thought that the prosecutor's questioning of Santa Cruz on redirect examination had opened up the results of the prior trials to questioning. Ellenbogen therefore contends that he thought he was in the right, as did the attorney in *In re Brown,* 454 F.2d 999 (D.C.Cir.1971), who attempted to fulfill his role as appointed counsel in the District Court despite the fact that he was not a member of the District Court bar. We reversed the attorney's conviction in *Brown* on the grounds that there was insufficient evidence of contumacious intent. Ellenbogen's case, however, is easily distinguishable from *Brown.* Ellenbogen claims that he thought the prior acquittal of Demi Sanya was "opened up" for questioning when the prosecutor asked Santa Cruz whether he had testified in previous trials, and Santa Cruz answered affirmatively. But nothing in this testimony opened up the *results* in the prior trials to questioning, particularly the results of the Demi Sanya trial, which was the specific object of a court ruling. In any case, Ellenbogen could easily have approached the bench and requested clarification on the extent to which prior

---

1. The District Court also based Ellenbogen's contempt conviction on 18 U.S.C. § 401(2), which prohibits "[m]isbehavior of any of [the court's] officers in their official transactions." On appeal, the government has relied on § 401(3) and conceded that § 401(2) does not apply to the

conduct of an attorney. While some might disagree with that concession, because we uphold the contempt conviction under § 401(3), we need not consider that alternate theory as any error committed by the District Court in regard to § 401(2) was harmless.

trials were now a fit topic for questions. The facts in the record do not paint Ellenbogen with the same degree of good faith that the attorney in *Brown* had.

Ellenbogen also argues that he had not demonstrated any pattern of disobedience in the District Court and that his single improper question did not constitute sufficient grounds for a contempt conviction. However, as the government notes, the District Court had warned Ellenbogen several times about the dangers of disobeying court rules and orders. On May 4, 1994, the District Court said, "I am not going to argue with you, Mr. Ellenbogen. You are coming perilously close to getting yourself in trouble. I have ruled." On May 12, 1994, the judge said, "I have had just about enough of your vituperative, pejorative objections, Mr. Ellenbogen. You will henceforth couch your objections in legal language and comport yourself as an officer of this court." Later the same day, the judge again warned Ellenbogen: "[I]f you continue to raise objections which you know or should know are frivolous and without foundation and if you continue to try to disrupt this proceeding by repeated interruptions of the interrogation of a witness you will be sanctioned." True, these warnings were unrelated to testimony regarding the acquittal of Demi Sanya, but as we have never held that warnings of any kind are a prerequisite to a summary contempt conviction, the fact that the court warned Ellenbogen about his courtroom conduct in general makes the record stronger than it needs to be.

Finally, Ellenbogen argues that upholding his contempt conviction will have a chilling effect on other attorneys' zealous advocacy on behalf of their clients. But this argument proves too much. The same contention could be made as to any contumacious behavior during a trial. Zealous advocacy of a client's cause is never a legitimate excuse for disobeying a clear ruling of the court, and convicting an attorney of contempt for actual disobedience will not chill criminal defense attorneys from zealous advocacy within the bounds of the law.

## III. Conclusion

Ellenbogen has failed to show that the District Court abused its discretion in employing the summary contempt procedures of Rule 42(a) in this case. Furthermore, for the aforementioned reasons, we hold that the evidence in the record is sufficient as a matter of law to support a summary conviction for contempt of court under 18 U.S.C. § 401(3). Accordingly, we affirm Ellenbogen's conviction for contempt.

*Affirmed.*