UNITED STATES of America

v.

**SUN–DIAMOND GROWERS OF CALIFORNIA.**

**Criminal Action No. 96–193.**

United States District Court, District of Columbia.

May 13, 1997.

**488**

Donald C. Smaltz, Barry Coburn, Office of Independent Counsel, Alexandria, VA, for Plaintiff.

Richard A. Hibey, Eric W. Bloom, Winston & Strawn, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

URBINA, District Judge.

**Denying Sun–Diamond of California's Renewed Motion for Judgment of Acquittal**

### I. Introduction

This matter comes before the court upon Sun–Diamond Growers of California's (Sun–Diamond) renewed motion for judgment of acquittal. On June 13, 1996, a grand jury returned a nine count indictment against Sun–Diamond. Counts I and II charged Sun–Diamond with providing former Secretary of Agriculture Alphonso Michael Espy (Secretary Espy) with illegal gratuities in violation of 18 U.S.C. §§ 2 and 201(c)(1)(A).

Counts III and IV alleged that Sun–Diamond committed wire fraud in violation of 18 U.S.C. §§ 2, 1343 and 1346. Counts V through IX charged Sun–Diamond with providing illegal campaign contributions to Secretary Espy's brother, Henry Espy, in violation of Federal Election Campaign Act (FECA), 2 U.S.C. §§ 431–455, as well as 18 U.S.C. § 2. Sun–Diamond moved to dismiss all counts charged in the indictment. The court denied Sun–Diamond's motion in its entirety. *See U.S. v. Sun–Diamond Growers of California,* 941 F.Supp. 1262 (D.D.C. 1996).[1]

On September 9, 1996 the trial in this matter began. On September 16, 1996, at the close of the Government's case, Sun–Diamond moved for judgment of acquittal on all nine counts. The court denied Sun–Diamond's motion. On September 24, 1996, the jury returned a guilty verdict on counts I and III through IX. The jury acquitted Sun–Diamond of the charges alleged in count II.[2] Sun–Diamond now renews its motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c). Sun–Diamond does not renew its motion with respect to count I. *See* Sun–Diamond's Motion for Judgment of Acquittal at 2 n. 1.

Sun–Diamond advances three arguments in support of its motion. First, Sun–Diamond argues that the Government failed to introduce sufficient evidence from which a reasonable jury could find beyond a reasonable doubt that Sun–Diamond's former Vice-President of Corporate Affairs, Mr. Richard Douglas, acted on behalf of Sun–Diamond when he violated the federal campaign laws. Second, Sun–Diamond argues that with respect to counts III and IV (the wire fraud counts), the Government failed to prove beyond a reasonable doubt that Mr. Douglas or Sun–Diamond possessed the requisite intent to defraud Mr. Lake's corporate employer. Sun–Diamond further maintains that the Government failed to prove beyond a reasonable doubt that Mr. Douglas engaged in an

---

1. For a more complete factual history surrounding this case *see United States v. Sun–Diamond Growers of California,* 941 F.Supp. 1262 (D.D.C. 1996) and *United States v. Sun–Diamond Growers of California,* 941 F.Supp. 1277 (D.D.C.1996).

2. In count II, the Government alleged that Sun–Diamond, through Mr. Douglas, provided funds to Secretary Espy's girlfriend for her airfare to attend a conference in Greece.

interstate wire communication that furthered the scheme to defraud. Lastly, Sun–Diamond asserts that the Government failed to establish that Mr. Douglas' use of the wire message was in furtherance of the scheme entered into by Mr. Douglas and Mr. Lake.

Sun–Diamond's motion must again be denied. The Government introduced sufficient evidence from which a reasonable jury could conclude that Mr. Douglas who, as the second highest ranking officer of the defendant, was responsible for representing Sun–Diamond's interests before senior government officials was indeed acting with the intent of benefitting his corporate employer when he engaged in an illegal scheme to secure unlawful campaign contributions for Secretary Espy's brother, Henry Espy. In addition, a reasonable jury could have concluded that Mr. Douglas possessed the requisite intent to defraud Mr. Lake's corporate employer and that the use of an interstate wire was used to further the fraud.

## II. Discussion

### A. Legal Standard

■ In ruling on a motion for judgment of acquittal, the trial court must determine whether,

> viewing the evidence in the light most favorable to the Government, ... and recognizing that it is the jury's province to determine credibility and to weigh the evidence, a reasonable jury *must necessarily* entertain a reasonable doubt on the evidence presented.

*United States v. Singleton,* 702 F.2d 1159, 1163 (D.C.Cir.1983) (emphasis in the original). The court must ask whether "a fair-minded and reasonable trier of fact [could] accept the evidence as probative of the defendant's guilt beyond a reasonable doubt." *In Re Holloway,* 995 F.2d 1080, 1082 (D.C.Cir. 1993) (internal citation omitted), *cert. denied,* 511 U.S. 1030, 114 S.Ct. 1537, 128 L.Ed.2d 190 (1994); *see also In Re Ellenbogen,* 72

F.3d 153, 157 (D.C.Cir.1995). If "a fair-minded and reasonable trier of fact [could] accept the evidence as probative of [the elements of the offense] beyond a reasonable doubt." the defendant's motion should be denied. *In Re Levine,* 27 F.3d 594, 595 (D.C.Cir.1994). Thus, in reviewing the sufficiency of the evidence to sustain a conviction, the court must ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the central elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in the original); *see also United States v. Lucas,* 67 F.3d 956, 959 (D.C.Cir.1995); *United States v. Applewhite,* 72 F.3d 140, 142 (D.C.Cir. 1995), *cert. denied,* ——— U.S. ———, 116 S.Ct. 1864, 134 L.Ed.2d 962 (1996). In this case, the court finds that the Government's evidence was sufficient to support the jury's verdict.

Viewed most favorably to the Government, the evidence supporting counts III through IX established that Mr. Douglas and Mr. Lake engaged in an illegal scheme to make unlawful campaign contributions to Henry Espy.[3] The scheme was inspired by Mr. Douglas who called Mr. Lake from California in February of 1994.[4] Although Mr. Douglas was unable to reach Mr. Lake, he left a message on Mr. Lake's answering machine. Subsequently, Mr. Lake returned Mr. Douglas' telephone call at which point Mr. Douglas advised Mr. Lake of Secretary Espy's need to secure funds for the purpose of helping to retire Henry Espy's campaign debt. During this conversation, Mr. Douglas and Mr. Lake discussed their agreement to pursue an illegal scheme to secure $5,000 in illegal campaign contributions.

The scheme entailed Mr. Lake raising $5,000 from employees of Robinson–Lake, his corporate employer[5] Because it is illegal for

---

3. Henry Espy ran, unsuccessfully, for the congressional seat vacated by Secretary Espy when the latter became Secretary of Agriculture.

4. Mr. Lake testified that he was in either Dallas or Washington, D.C. when he received the message.

5. Robinson–Lake is a wholly-owned subsidiary of Bozell Worldwide, Inc. which in turn is owned by Bozell, Jacobs, Kenyon & Eckhardt, Inc., a Delaware corporation. Robinson–Lake is a public relations firm in Washington, D.C. which represented Sun–Diamond. The firm has now dropped Mr. Lake's name.

a corporation to make a campaign contribution to a candidate for office, Mr. Douglas and Mr. Lake conspired to make it appear that the individuals themselves were making the contributions. These individuals were to be reimbursed by Mr. Lake who in turn was to be reimbursed by Robinson–Lake. In order to execute this scheme, Mr. Douglas and Mr. Lake invoiced Robinson–Lake for a fictitious expense in order to advance the funds for the illegal campaign contribution and, further, to conceal the contributions.[6] Mr. Lake falsified corporate records in order to secure the funds. Robinson–Lake was ultimately reimbursed by Sun–Diamond since Mr. Douglas and Mr. Lake made it appear as though Robinson–Lake had expended the funds on behalf of Sun–Diamond.[7]

## B. Sufficiency of Evidence: Counts III through IX

The jury in this case found Sun–Diamond, through Mr. Douglas, guilty of making illegal campaign contributions to Secretary Espy's brother in violation of FECA as well as the aiding and abetting statute, 18 U.S.C. § 2. FECA prohibits a person from making a campaign contribution in the name of another person. 2 U.S.C. § 441f. It also prohibits a corporation from making a campaign contribution "in connection with any election" for Congress. 2 U.S.C. § 441b. Sun–Diamond contends that there was insufficient evidence from which the jury could find, beyond a reasonable doubt, that Mr. Douglas acted to benefit Sun–Diamond when he helped secure the illegal campaign contributions[8] Conversely, Sun–Diamond maintains that Mr. Douglas acted against its interests.

■■■ "The law of corporate criminality is not well developed in this circuit." *In Re Sealed Case.* 107 F.3d 46, 51 (D.C.Cir.1997). However, it has long been established that corporations are criminally liable for the crimes of their senior officers, "particularly when the corporation benefits from the officers' offensive conduct." *Genty v. Resolution Trust Corp.,* 937 F.2d 899, 909 (3rd Cir.1991); *see also New York Central R.R. v. United States,* 212 U.S. 481, 492–94, 29 S.Ct. 304, 306–07, 53 L.Ed. 613 (1909). This is so because the acts of a corporation are the acts of its employees acting within the scope of their employment. *U.S. v. Bank of New England, N.A.,* 821 F.2d 844, 856 (1st Cir. 1987); *United States v. One Parcel of Land,* 965 F.2d 311, 316 (7th Cir.1992). Other circuits that have considered the issue have held that in order to find a corporate defendant criminally liable for the acts of its agents, the Government must establish, beyond a reasonable doubt, that the agent acted within the scope of his employment with the intent to benefit the corporation. *See United States v. Cincotta,* 689 F.2d 238, 242 (1st cir.), *cert. denied,* 459 U.S. 991, 103 S.Ct. 347, 74 L.Ed.2d 387 (1982); *Mylan Laboratories, Inc. v. Akzo, N.V.,* 2 F.3d 56, 63 (4th Cir.1993); *United States v. Automated Medical Laboratories, Inc.,* 770 F.2d 399, 406 (4th cir.1985); *United States v. Basic Const. Co.,* 711 F.2d 570, 573 (4th Cir.1983) (per curiam); *United States v. Bi–Co Pavers, Inc.,* 741 F.2d 730, 737 (5th Cir.1984); *United States v. One Parcel of Land,* 965 F.2d 311, 316 (7th Cir. 1992); *D & S Auto Parts, Inc. v. Schwartz,* 838 F.2d 964, 967 (7th Cir.1988), *cert. denied,* 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988); *United States v. Hilton Hotels Corp.,* 467 F.2d 1000, 1007 (9th Cir.1972), *cert. denied,* 409 U.S. 1125, 93 S.Ct. 938, 35 L.Ed.2d 256 (1973).[9]

■■■ Sun–Diamond's assertion that Mr. Douglas acted against corporate interests is not supported by the record. Sun–Diamond

---

6. Mr. Douglas and Mr. Lake invoiced Robinson–Lake for a charitable dinner that was to benefit an African–American organization. Neither Mr. Douglas nor Mr. Lake, however, attended the dinner.

7. Robinson–Lake was ultimately reimbursed $4,000.

8. Sun–Diamond does not argue that Mr. Douglas was acting outside the scope of his employment.

9. The Eleventh Circuit divides the analysis and requires that the agent act within the scope of his employment *and* for the benefit of the corporation. *Grand Union Co. v. United States,* 696 F.2d 888 (11th Cir.1983). For purposes of this case, it is immaterial whether the court separate the inquiry into two distinct questions. The pertinent issue is whether a reasonable jury could have concluded that Mr. Douglas acted with the intent to benefit Sun–Diamond.

had two matters pending before the Department of Agriculture in which it had a significant economic interest: the Market Promotion Program and the matter relating to methyl bromide. *See Sun–Diamond Growers of California*, 941 F.Supp. at 1265–66. The Government introduced substantial evidence that could lead a reasonable jury to conclude that one of Mr. Douglas' primary functions was to maintain good relations with senior government officials to advance Sun–Diamond's interests. Sun–Diamond's President Larry Busboom testified that Mr. Douglas, Sun–Diamond's Senior Vice–President for Corporate Affairs at the time and second highest ranking official at Sun–Diamond, was responsible for representing Sun–Diamond in Washington, D.C. Mr. Busboom further testified that Mr. Douglas met periodically with Secretary Espy. Moreover, the Government presented evidence that showed that Sun–Diamond touted the relationship between Mr. Douglas and Secretary Espy and its positive impact on Sun–Diamond. In fact, Mr. Douglas' compensation was increased as a result of his success in advancing Sun–Diamond's interests with Secretary Espy.

The evidence revealed that Mr. Douglas proposed the illegal scheme at the behest of Secretary Espy. Mr. Douglas proposed the scheme while he was a high-ranking Sun–Diamond officer, and he used corporate funds to ultimately reimburse Robinson–Lake. Furthermore, he was responsible for directing Mr. Lake's activities. It was certainly reasonable for the jury to conclude that by securing contributions to help retire Henry Espy's campaign debt, Mr. Douglas would advance Sun–Diamond's interests by further ingratiating himself with Secretary Espy.[10] Evidence upon which a jury could reasonably conclude that Mr. Douglas secured illegal campaign contributions in order to benefit Sun–Diamond was amply presented.[11]

## C. Sufficiency of the Evidence: Counts III and IV

In count III and IV, the wire fraud counts, the Government alleged that Mr. Lake and Mr. Douglas engaged in a scheme to defraud Bozell and Robinson–Lake of money and of the "intangible right" to the honest services of Mr. Lake[12] The indictment alleged that Mr. Douglas and Mr. Lake defrauded Mr. Lake's corporate employer of $5,000 and of the intangible right to the honest services of Mr. Lake by, *inter alia*, Mr. Lake falsifying

---

**10.** Sun–Diamond makes much of the fact that purportedly no other corporate officials knew about Mr. Douglas' activities. However, knowledge obtained by a corporate agent acting within the scope of his employment is imputed to the corporation. *See, e.g., U.S. v. One Parcel of Land*, 965 F.2d 311, 317 (7th Cir.1992); *United States v. Bank of New England, N.A.*, 821 F.2d 844, 856 (1st Cir.1987), *cert. denied*, 484 U.S. 943, 108 S.Ct. 328, 98 L.Ed.2d 356 (1987). Sun–Diamond does not contest the fact that Mr. Douglas was acting with in the scope of his employment. Moreover, even if Mr. Douglas had acted against corporate policy or the corporation's express instructions or even if Sun–Diamond had derived no benefit from Mr. Douglas' actions, Sun–Diamond could still be criminally responsible for Mr. Douglas' acts. *See American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 565–67, 102 S.Ct. 1935, 1942–43, 72 L.Ed.2d 330 (1982); *U.S. v. Automated Medical Laboratories, Inc.*, 770 F.2d 399, 406 (4th Cir. 1985); *United States v. Basic Construction Co.*, 711 F.2d 570 (4th Cir.1983); *accord* Restatement (Second) of Agency §§ 261 and 262.

**11.** Sun–Diamond's argument that because Mr. Douglas sought corporate funds to pay for the illegal campaign contributions and as a result Mr. Douglas could not have acted to benefit Sun–Diamond is disingenuous. The $5,000 in illegal campaign contributions to the Secretary of Agriculture's brother would certainly go a long way in furthering Sun–Diamond's interests with the Secretary. Moreover, the jury was well within its province in rejecting Sun–Diamond's defense that Mr. Douglas' actions were a result of his long-standing friendship with Secretary Espy. The evidence presented established that Mr. Douglas' position with the company depended on how well he represented Sun–Diamond's interests in front of senior government officials, Secretary Espy being the individual who could most impact Sun–Diamond's fortunes.

**12.** The wire fraud statute states, in pertinent part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 1343.

corporate records to secure funds used to make an illegal corporate campaign contribution. Sun–Diamond asserts that the court should enter a judgment of acquittal on counts III and IV, because there was no evidence which established that Mr. Douglas intended to defraud Robinson–Lake or Bozell.

In order to sustain the convictions for wire fraud,[13] the Government needs only establish two elements beyond a reasonable doubt: (1) that the defendant engaged in a scheme to defraud or aided and abetted in this pursuit;[14] and (2) that the defendant used a wire for the purpose of executing the scheme or aided and abetted in the use of a wire for the purpose of executing the scheme.[15] *Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 362–63, 98 L.Ed. 435 (1954); *United States v. Pollack,* 534 F.2d 964, 971 (D.C.Cir.1976), *cert. denied,* 429 U.S. 924, 97 S.Ct. 324, 50 L.Ed.2d 292 (1976); *United States v. Alston,* 609 F.2d 531, 536 (D.C.Cir.1979); *United States v. Lemire,* 720 F.2d 1327, 1334–35 (D.C.Cir.1983). The wire fraud statute does not require that the scheme to defraud be ultimately successful or that the intended victim suffer injury. *Pollack,* 534 F.2d at 971 (stating that "success of the scheme and loss by a defrauded person are not essential elements ... under Section 1343."); *see also United States v. Gross,* 416 F.2d 1205 (8th Cir.1969), *cert. denied,* 397 U.S. 1013, 90 S.Ct. 1245, 25 L.Ed.2d 427 (1970); *Deaver v. United States,* 155 F.2d 740 (D.C.Cir.1946), *cert. denied,* 329 U.S. 766, 67 S.Ct. 121, 91 L.Ed. 659 (1946).

The scheme to defraud must, however, "threaten some cognizable harm to its target, that harm need not be deprivation of tangible property or money; criminal fraud encompasses schemes to defraud persons of intangibles as well." *Lemire,* 720 F.2d at 1336; *United States v. Von Barta,* 635 F.2d 999, 1006 (2d Cir.), *cert. denied,* 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981); *United States v. Bohonus,* 628 F.2d 1167 (9th Cir.1980); *United States v. Condolon,* 600 F.2d 7, 9 (4th Cir.1979); *United States v. Louderman,* 576 F.2d 1383 (9th Cir.), *cert. denied,* 439 U.S. 896, 99 S.Ct. 257, 58 L.Ed.2d 243 (1978). As to the deprivation of honest services, *see* note 14, the Government needs only establish that Mr. Douglas could have anticipated that the scheme posed an "independent business risk to" Mr. Lake's corporate employer. *Id.* at 1337;[16] *see also Von Barta,* 635 F.2d at 1005–06 n. 14 ("Gov-

13. In count III and IV, Sun–Diamond was also charged with violating 18 U.S.C. § 2, the aiding and abetting statute. The court instructed the jury upon this charge. The statutes provides:

  (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
  (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C. § 2(a) and (b).

To be an aider and abettor under this statute, it was not necessary that Mr. Douglas know all the specifics of the illegal scheme. *United States v. DeFiore,* 720 F.2d 757, 763 (2d Cir.1983) (internal citation omitted). Although in this case, the jury could have reasonably concluded that Mr. Douglas and therefore Sun–Diamond was indeed aware of all the material details.

14. A "scheme to defraud" includes a "scheme or artifice to deprive another of the intangible right of honest services." *See* 18 U.S.C. § 1346; *see also United States v. Sawyer,* 85 F.3d 713, 723 (1st Cir.1996). The purpose of Section 1346 was to, pursuant to the mail and wire fraud statutes, "protect any person's intangible right to the honest services of another[.]" 134 Cong.Rec. S17360–02 (Daily ed., Nov. 10, 1988) (Senator Biden).

15. "Cases construing mail fraud apply to the wire fraud statute" because the requisite elements are the same. *United States v. Lemire,* 720 F.2d 1327, 1334–35 n. 6 (D.C.Cir.1983), *cert. denied,* 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984).

16. *Lemire* involved the intentional failure of an employee to disclose a conflict of interest to his employer. The court concluded that this failure alone did not suffice to sustain a wire fraud conviction. Rather, "[t]here must be a failure to disclose something which in the knowledge or contemplation of the employee poses an independent business risk to the employer." *Id.* at 1337. The court's concern was that any intentional undisclosed breach of duty to an employer would, without more, be unlawful. *Id.* at 1336. This case, in contrast, does not involve a conflict of interest. Rather, it entails a scheme by Mr. Douglas and Mr. Lake to defraud Mr. Lake's corporate employer of funds in order to secure illegal campaign contributions..

ernment need not show that the scheme's victims were in fact defrauded ... [only] that some actual harm or injury was at least contemplated."); *United States v. Dixon*, 536 F.2d 1388, 1400–01 (2d Cir.1976).

The evidence in this case, viewed most favorably to the Government, suffices to sustain the wire fraud convictions. The evidence must be viewed in its totality, "since one fact may gain color from others." *United States v. Tramunti*, 500 F.2d 1334, 1338 (2d Cir.), *cert. denied*, 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673 (1974). The Government established that Sun–Diamond, through Mr. Douglas, engaged a scheme or artifice to defraud Mr. Lake's corporate employer of money and the right to the honest services of Mr. Lake. In addition, the Government established that Mr. Douglas used a wire in furtherance of the scheme.

Wire fraud is a specific intent offense. *Von Barta*, 635 F.2d at 1005 n. 14; *Bohonus*, 628 F.2d at 1172; *United States v. Keane*, 522 F.2d 534, 544 (7th Cir.1975), *cert. denied*, 424 U.S. 976, 96 S.Ct. 1481, 47 L.Ed.2d 746 (1976). In order to establish specific intent, the Government needed to prove only that the scheme was "reasonably calculated to deceive persons of ordinary prudence and comprehension." *Irwin v. United States*, 338 F.2d 770, 773 (9th Cir. 1964), *cert. denied*, 381 U.S. 911, 85 S.Ct. 1530, 14 L.Ed.2d 433 (1965); *Bohonus*, 628 F.2d at 1172. "The requisite intent ... may be inferred from the totality of the circumstances and need not be proven by direct evidence." *United States v. Alston*, 609 F.2d 531, 538 (D.C.Cir.1979), *cert. denied*, 445 U.S. 918, 100 S.Ct. 1281, 63 L.Ed.2d 603 (1980); *United States v. Sawyer*, 85 F.3d 713, 733 (1st Cir.1996) (stating that "specific intent to deceive may be proven (and usually is) by indirect and circumstantial evidence"); *United States v. O'Brien*, 14 F.3d 703, 706 (1st Cir.1994) (observing that fraud crimes "by their very nature, often yield little in the way of direct proof."); *United States v. Nivica*, 887 F.2d 1110, 1113 (1st Cir.1989) (stating that "factual circumstances may signal fraudulent intent in ways as diverse as the manifestations of fraud itself"), *cert. denied*, 494 U.S. 1005, 110 S.Ct. 1300, 108 L.Ed.2d 477

(1990). Intent is demonstrated by evaluating the scheme itself. *United States v. Reid*, 533 F.2d 1255, 1261 (D.C.Cir.1976). There must be a recognizable scheme formed with the intent to defraud. *Post v. United States*, 407 F.2d 319, 329 (D.C.Cir.1968), *cert. denied*, 393 U.S. 1092, 89 S.Ct. 863, 21 L.Ed.2d 784 (1969).

In this case, the jury permissibly concluded that Mr. Douglas, in conjunction with Mr. Lake, possessed the intent to defraud Mr. Lake's corporate employer of $5,000 and its right to the honest services of Mr. Lake. Mr. Douglas and Mr. Lake engaged in a scheme whereby they secured illegal campaign contributions to help retire Henry Espy's campaign debt. They furthered this scheme by, *inter alia*, creating false expense reports seeking reimbursement from Mr. Lake's employer of money purportedly expended by Mr. Lake for the benefit of Sun–Diamond. "There can be no serious dispute that the creation of false and fraudulent corporate documents by a corporate officer to conceal payments from the corporate treasury of monies expended for non-existent [purposes], is a fraud on the corporation." *United States v. Weiss*, 579 F.Supp. 1224, 1242 (S.D.N.Y.1983), *aff'd*, 752 F.2d 777 (2d Cir.1985). Moreover, in order to execute the scheme, Mr. Douglas and Mr. Lake caused Robinson–Lake to advance the funds for the purpose of concealing the illegal campaign contribution by Sun–Diamond to Henry Espy.

The fact that Mr. Lake's employer was ultimately reimbursed does not negate the fact that it was forced, through artifice, to advance funds used for an illegal purpose. Mr. Douglas and Mr. Lake perpetrated the fraud when they unlawfully extracted the funds from Mr. Lake's corporate employer. Additionally, Mr. Douglas could certainly anticipate the identifiable, concrete harm Mr. Lake's conduct, engaged in at the direction of Mr. Douglas, would have on Robinson–Lake. Robinson–Lake is a public relations firm; an enterprise founded on the credibility and legitimacy of its practitioners. Mr. Douglas could certainly foresee the concrete damage Mr. Lake's illegal conduct could inflict upon

Robinson–Lake, and as a consequence, on Bozell.

■ As set forth above, the second required element of wire fraud is the use of a wire for the purpose of executing the scheme to defraud. The Government introduced sufficient evidence pursuant to which the jury could have reasonably concluded that Mr. Douglas' fraudulent interstate wire communication "occur[red] prior to the fruition of and [bore] a sufficient connection to the realization of the scheme to be considered as made for the purpose of executing the scheme." *Pollack*, 534 F.2d at 971. Specifically, the Government introduced evidence, in the form of Mr. Douglas' expense report, which established that during the period of time when he called Mr. Lake in Dallas or Washington, D.C., he was in California. Thus, contrary to Sun–Diamond's position, there was sufficient evidence for the jury to conclude that Mr. Douglas engaged in an interstate communication. Although Mr. Douglas was unable to reach Mr. Lake, he left a message for the latter to return his telephone call. Mr. Lake did. At that point, Mr. Douglas and Mr. Lake engaged in a conversation in which they discussed the illegal scheme. Mr. Douglas informed Mr. Lake of Secretary Espy's desire to secure campaign contributions for his brother. Mr. Douglas proceeded to discuss with Mr. Lake the illegal manner in which they could achieve this end. The original communication was therefore instrumental in precipitating and thus furthering the illegal scheme.

### III. Conclusion

For the reasons set forth above, it is this 12 day of May 1997,

**ORDERED** that Sun–Diamond's Motion for Judgment of Acquittal on Counts III Through IX of the Indictment be and is hereby **DENIED.**

**SO ORDERED.**